UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WLADYSLAW MIEZGIEL,                           :
                                              :
                       Petitioner,            :
                                              :           **MEMORANDUM & ORDER**
     -against-                                :           11-CV-2129 (DLI) (CLP)
                                              :
ERIC H. HOLDER, JR., United States            :
Attorney General *and* JANET NAPOLITANO,      :
Department of Homeland Security,              :
                                              :
                       Respondents.           :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Petitioner Wladyslaw Miezgiel ("Petitioner") filed an I-130 Petition for Alien Relative (the "I-130 Petition") with United States Citizenship and Immigration Services ("USCIS"), seeking recognition of his marriage to Grazyna Miezgiel ("Grazyna"). USCIS denied the I-130 Petition, and the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. Petitioner commenced this action seeking judicial review of the BIA decision. The government moves for summary judgment. (Respt.'s Mem., Docket Entry No. 16; Respt.'s Reply, Docket Entry. No 19.) Petitioner opposes. (Pet.'s Mem., Docket Entry No. 18.) For the reasons set forth below, the government's motion for summary judgment is granted.

## BACKGROUND

On January 26, 2006, Petitioner, then a lawful permanent resident of the United Sates, filed an I-130 Petition with USCIS seeking recognition of his marriage to Grazyna. (R.[1] at 176.) As evidence of the marriage, Petitioner submitted a "Complete Transcript of a Marriage Certificate" ("Certificate"), issued by the Office of Vital Records in Warsaw, Poland. (*Id.* at

---

[1] "R." refers to the USCIS Administrative Record, filed in hard copy due to volume. (*See* Docket Entry No. 16.)

179-82.) The Certificate stated that Petitioner and Grazyna were married at the Polish Consulate in New York on March 8, 2002. (*Id.* at 180.) On June 18, 2009, USCIS notified Petitioner that the Certificate was "not considered valid for immigration purposes," because it was from the Polish Consulate rather than from "the appropriate civil authority in the state where the marriage ceremony was performed." (*Id.* at 199-200.) In response, Petitioner submitted an essentially identical document entitled "Abridged Transcript of a Marriage Certificate" ("Abridged Certificate"), which stated that Petitioner and Grazyna were married in New York but made no mention of the Polish Consulate. (*Id.* at 202.)

On August 27, 2009, the District Director of USCIS's Vermont Service Center denied the I-130 Petition, holding that Petitioner had failed to comply with USCIS's prior notice to provide a marriage certificate issued by a civil authority in New York, the state where Petitioner and Grazyna allegedly were married. (*Id.* 140-41.) On September 28, 2009, Petitioner appealed the District Director's decision to the BIA. (*Id.* 139-71.) On September 7, 2010, the BIA dismissed Petitioner's appeal without prejudice to file another application that included evidence of a marriage performed in compliance with New York law. (*Id.* 131-32.)

On May 2, 2011, Petitioner appealed the decision of the BIA to this Court. By notice of motion dated September 28, 2011, the government moves for summary judgment. Petitioner opposes, contending that his marriage to Grazyna is valid.

## DISCUSSION

I.  **Standard of Review**

    A.  **Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

  The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

   B.   **Review of Agency Action**

When reviewing agency decisions under the Administrative Procedure Act ("APA"), the Court "begin[s] by reviewing the agency's construction of the statute at issue . . . by applying the familiar two-step process of statutory interpretation' established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)." *Barahona v. Napolitano*, 2011 WL 4840716, at *5 (S.D.N.Y. Oct. 11, 2011). Under *Chevron*, the Court first inquires "'whether Congress has directly spoken to the precise question at issue'; if so, our inquiry is at an end." *Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 174 (2d Cir. 2006) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 842-43). However, "[i]f there is silence or ambiguity in the statute . . . then the agency has discretion in its implementation, and we ask only if the construction it has given the statute is reasonable." *Id.*

Assuming the agency's action was authorized by statute, the Court then must consider whether the action at issue was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision may be overturned as

arbitrary and capricious only "'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Berrios v. Holder*, 502 F. App'x 100, 101 (2d Cir. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

Whether an agency action is arbitrary and capricious is a legal question to be resolved on the basis of agency records in existence at the time of the action, and the Court will not engage in an evidentiary hearing or a *de novo* review. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985); *Guan v. Gonzalez.* 432 F.3d 391, 394-95 (2d Cir. 2005); *J. Andrew Lange, Inc. v. FAA,* 208 F.3d 389, 391 (2d Cir. 2000). Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious. *See Boatmen v. Gutierrez*, 429 F. Supp. 2d 543, 548 (E.D.N.Y. 2006); *Glara Fashion, Inc. v. Holder*, 2012 WL 352309, at *6 (S.D.N.Y. Feb. 3, 2012). When undertaking APA review, a court properly may grant summary judgment based upon a finding that there are no genuine issues of material fact in dispute with regard to the administrative record. *See Soler v. G & U, Inc.*, 615 F.Supp. 736, 740 (S.D.N.Y.1985); *Just Bagels Mfg., Inc. v. Mayorkas*, 2012 WL 5233643, at *6-7 (S.D.N.Y. Oct. 24, 2012).

**II.    Application**

There is no genuine dispute as to any material fact in this case. The parties disagree only as to whether USCIS's decision that Petitioner's marriage to Grazyna was invalid for immigration purposes was arbitrary and capricious. The government argues that it was reasonable to require Petitioner to submit documentation of a marriage in compliance with New

5

York State law. (Respt.'s Mem. at 6.) Petitioner argues that it was arbitrary and capricious for USCIS to deny his I-130 Petition, because a marriage ceremony conducted by a foreign consular officer at a foreign consulate located in New York is valid for immigration purposes. (Pet.'s Mem. at 3.)

### A. The Agency's Choice of Law Rule

The Court begins by inquiring whether Congress has spoken to the precise question at issue. Clearly it has not. The Immigration and Nationality Act, 8 U.S.C. §§ 1100, *et seq.* ("INA"), does not define the term "spouse," nor does it dictate criteria for the USCIS to use in examining the validity of a marriage.[2] Thus, USCIS has had to interpret the ambiguous terms of the INA to determine what choice of law rule to apply when determining the validity of a marriage for immigration purposes.

Turning to the second step of the *Chevron* analysis, the Court finds that USCIS's interpretation of the INA is reasonable. In determining whether a marriage is valid for immigration purposes, USCIS applies the laws of the place where the marriage was celebrated. *See, e.g.*, *Matter of Hosseinian*, 19 I. & N. Dec. 453 (BIA 1987) (holding that "[t]he well-established rule is that it is the function of the state to determine how its residents may enter into the marital relationship"); *Matter of Bautista*, 16 I. & N. Dec. 602, 603 (BIA 1978) (holding that the petitioner's marriage to the beneficiary was valid for immigration purposes, because it complied with the law of the Philippines, which was the place of celebration); *Matter of Arenas*, 15 I. & N. Dec. 174, 174-75 (BIA 1975) (holding that, where the petitioner's prior marriage was

---

[2] The INA does not define the term "spouse," "wife," or "husband," except to clarify that these terms do not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated. 8 U.S.C. § 1101(a)(35).

dissolved after the subsequent marriage, the subsequent marriage's validity should be analyzed under the law of the place where it was celebrated).

USCIS's interpretation of the INA is consistent with the choice of law rule applied by many courts in the context of matrimonial law. Indeed, the Supreme Court, the Second Circuit Court of Appeals, and the New York State Court of Appeals all have held that the validity of a marriage generally is governed by the law of the place where the marriage was celebrated or solemnized. *See, Loughran v. Loughran*, 292 U.S. 216, 223 (1934) (finding that a marriage, if valid under the law of state in which the marriage was entered into, will generally be recognized as valid by all other jurisdictions); *Shikoh v. Murf*, 257 F.2d 306, 307, 309 (2d Cir. 1958) (finding that a divorce registered with the Consulate General of Pakistan in New York was invalid for immigration purposes, because it did not comply with the laws of New York State); *Lembcke v. United States*, 181 F.2d 703, 706 (2d Cir. 1950) (finding that the "validity of [a] marriage necessarily depends upon the law of the place where the marriage was contracted"); *Mott v. Duncan Petroleum Trans.*, 51 N.Y.2d 289, 292 (1980) (holding that "[t]he law to be applied in determining the validity of [] an out-of-State marriage is the law of the State in which the marriage occurred").

Moreover, the BIA's published opinions interpreting ambiguous provisions of the INA are entitled to deference. *Yuen Jin v. Mukasey*, 538 F.3d 143, 150 (2d Cir. 2008) (finding that "[p]recedential BIA decisions (i.e., those that have been published) . . . are eligible for *Chevron* deference insofar as they represent the agency's authoritative interpretations of statutes"). *See also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837; *Baraket v. Holder*, 632 F.3d 56, 58 (2d Cir. 2011). The BIA "should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case

adjudication.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (quoting *INS v. Cardoza-Fonseca,* 480 U.S. 421, 448-449 (1987)).

In arguing that USCIS's decision to apply the law of the state in which the marriage was celebrated is arbitrary and capricious, Petitioner cites the Second Restatement of Conflict of Laws. The Second Restatement adopts a flexible approach, providing that "[t]he validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage. . . ." Restatement (Second) of Conflict of Laws § 283(1) (1971). Notwithstanding the inconsistency between the choice of law rule adopted by the USCIS and the rule recommended by the Second Restatement, Petitioner's argument is without merit. As a preliminary matter, the USCIS has discretion in its interpretation and implementation of the INA. The agency is only required to give the INA a *reasonable* construction. *Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d at 174.

Even assuming, *arguendo*, that the USCIS were obligated to follow the Second Restatement, the agency's decision to apply New York law in this case was reasonable, because New York State had the most "significant relationship to the spouses and the marriage," as the Second Restatement requires. Petitioner and Grazyna have lived in New York State since 1992 (R. 191.), and their marriage was celebrated in New York, albeit at the Polish Consulate, in 2002. (*Id.* 180.) Other than noting that both he and Grazyna were Polish citizens at the time of their marriage, Petitioner has not pointed to any evidence in the record to indicate that Poland's interest in his marriage would justify the application of Polish law by the USCIS under the Second Restatement's choice of law rule.

Accordingly, this Court concludes that USCIS's application of New York law to determine the validity of Petitioner's marriage was reasonable. The Court proceeds to determine whether Petitioner's marriage was valid under the laws of New York State.

**B.     Validity of Petitioner's Marriage Under New York Law**

Petitioner concedes that his marriage ceremony "was not done according to New York laws [*sic*]." (Pet. Mem. at 4.)  Nonetheless, Petitioner maintains that his marriage is valid under New York law, because:  1) the marriage was authorized under Polish law, and, therefore, should be recognizable in all jurisdictions (Pet.'s Mem. at 3); and 2) "there is no strict requirement for how marriage should be performed." (*Id.* at 9.)

Petitioner makes two arguments in support of his position that a marriage authorized under Polish law is valid in New York State.  First, Petitioner argues that his consular marriage should be recognized under New York law, because "New York State has a history of recognizing judgments rendered in foreign countries." (Pet.'s Mem. at 8.)  Petitioner cites *Greschler v. Greschler*, in which the New York State Court of Appeals held that a divorce decree rendered by a foreign court was valid. *Greschler v. Greschler*, 51 N.Y.2d 368 (1980).  However, *Greschler* is inapposite, because the divorce at issue was carried out abroad, rather than in a foreign consulate within New York State.  Recognition of a foreign court's judgment with regard to a divorce that takes place in a foreign country is based on the principle of international comity. This principle of international comity does not apply to matrimonial actions that take place within the territory of the United States. *Shikoh v. Murff*, 257 F.2d at 309. *See also Matter of Hassan*, 16 I. & N. Dec. 16 (BIA 1976) (holding that a divorce granted at a foreign consulate in New York was not valid for immigration purposes because it did not comply with New York law); *Jung v. Novaya*, 47 N.Y.S.2d 48, 49 (N.Y. Dom. Rel. Ct. 1944) (holding that a "ceremonial

9

marriage" performed under the laws of a foreign power by a foreign consular officer on United States territory was invalid because it did not comply with the laws of New York State).

Second, Petitioner relies on Article 25(c) of the Consular Convention between the United States and Poland (the "Convention") to suggest that his marriage should be considered valid. The Convention provides, in pertinent part, as follows:

> A consular officer shall have the right to carry out the following functions within his consular district in accordance with the laws of the sending State:
> . . .
> (c) to prepare documents of vital statistics pertaining to births and deaths of nationals of the sending State, as well as receive statements concerning marriages in cases where both persons to marry are nationals of the sending State; however, this does not relieve the nationals of the sending State of the obligation to observe the laws and regulations of the receiving State concerning reporting or registering of births and deaths, and the performance of marriage.

Consular Relations Convention and Protocols Signed at Warsaw May 31, 1972, art. 25(c), 24 U.S.T. 1231.

Petitioner contends that Article 25(c) of the Convention obligates USCIS to recognize his consulate marriage. Petitioner argues, hyperbolically, that Article 25(c) would be meaningless if the Court affirms the BIA's decision finding his marriage to be invalid under New York law. Petitioner's reliance on the Convention is misplaced. Article 25(c) explicitly states that foreign nationals are not relieved "of the obligation to observe the laws and regulations of the receiving State concerning . . . the performance of marriage." Since foreign consuls are not authorized to perform marriages under the New York Domestic Relations Law, the BIA's decision holding Petitioner's marriage invalid, despite the fact that it was performed by a foreign consul, was not arbitrary and capricious. *See* N.Y. Dom. Rel. Law § 11 (providing that no marriage shall be valid unless solemnized by an individual holding one of an enumerated set of religious and civil positions).

Finally, Petitioner argues that "there is no strict requirement for how marriage should be performed," because: 1) "there is no specific language in the New York Constitution concerning the performance of a marriage" (Pet.'s Mem. at 6); 2) "the intention of the parties seeking to be married is paramount" under the Second Restatement (*Id.* at 9); and 3) "[e]very presumption lies in favor of a marriage." (*Id.* at 9.) This argument is frivolous in light of New York State's statutory requirements for entering into a valid marriage. *See generally* N.Y. Dom. Rel. Law § 11.

In sum, USCIS's application of New York State law to determine whether Petitioner's marriage was valid and its decision finding that Petitioner had failed to demonstrate that his marriage complied with New York State law were both reasonable. Thus, Petitioner has failed to show that the agency's actions were arbitrary and capricious.

## CONCLUSION

For the reasons stated above, the government's motion for summary judgment is granted and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
July 17, 2014

/s/
DORA L. IRIZARRY
United States District Judge